UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CEMENT MASONS' PENSION TRUST**
**FUND- DETROIT & VICINITY, et al.,**

          **Plaintiffs,**          No. 10-cv-14050

vs.          Hon. Gerald E. Rosen

**F & G POURED WALLS, INC., et al.,**

          **Defendants.**
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    June 27, 2011

PRESENT: Honorable Gerald E. Rosen
          United States District Chief Judge

## I.    INTRODUCTION

The Trustees of the Cement Masons' Pension Trust Fund, et al., ("Plaintiffs") initiated this action to obtain an audit and collect owed fringe benefit funds from F & G Poured Walls, Inc., ("F & G") and Liparoto Construction, Inc.("Liparoto") (collectively "Defendants"). Both Plaintiffs and Defendants have filed Motions for Summary Judgment, and both have filed responses and reply briefs. Having reviewed and considered the parties' respective motions, responses, briefs and supporting evidence, the Court has determined that oral argument is not necessary. Pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.     FACTS

Phil Liparoto incorporated Defendant Liparoto Construction, Inc., in 1988.  In 1999, he formed Defendant F & G Poured Walls, Inc.  Phil Liparoto was the sole officer and owner of Liparoto and, since 2000, has been the only signator on Liparoto's checking accounts.  Phil Liparoto and his wife Giovanna were the sole operators and owners of F & G, and both were signators on F & G's checking account.  Neither business used a corporate credit card, but Phil Liparoto maintained a personal credit card that he would use for both businesses.  F & G and Liparoto are located in the same building owned by Phil and Giovanna Liparoto, and F & G's records do not reflect any rent payments.  The two businesses are covered under the same commercial liability policy.  They file a single Michigan State Business Tax Return, but seperate federal tax returns.  F & G and Liparoto share a phone number, fax number, and administrative staff.

In 2008, Liparoto won a bid to perform concrete work at a new Rite-Aid store in Rockwood, Michigan.  Rite-Aid's building contract required that the work be done by union workers.  Because Liparoto did not employ union workers at the time, Phil Liparoto set up a meeting with Joel Santos, business manager and current president of the Cement Masons' Union Local 514 (the "Union").  Although Liparoto had won the contract with the Rite-Aid, Phil Liparoto asked Santos if F & G could sign the required Agreement with the Union instead.  Santos asked who would be performing the actual work at the Rite-Aid job, and was told that F & G would be.  Santos lodged no objection, and did not inquire into the relationship between Liparoto and F & G.  According to Phil Liparoto, Santos gave no indication that the Agreement was meant to bind Liparoto in addition to F & G, and Santos was aware that the two were

2

separate entities.

Pursuant to the Agreement, the Union would provide F & G with union workers to perform the work on the Rite-Aid job, and F & G would pay into the fringe benefits fund as part of the workers' pay.  After the Rite-Aid job in Rockwood, F & G had no further activity with the Union.

In June of 2008, attorneys for the Detroit Cement Masons' Fringe Benefit Fund sent F & G and Liparoto a letter to inform them that they would be audited to determine the amount of F & G's indebtedness to the Fund.  This audit was subsequently cancelled by Santos. However, in December 2010, another audit process was initiated after Santos saw a Liparoto Construction truck that had been used on the Rite-Aid job being used on another job at an Advanced Automotive Parts.  Santos reasoned that F & G was working at the Advanced Automotive Parts job because the truck had been present at the Rite-Aid job.  Because the Agreement with F & G was not limited to one project, Santos concluded that F & G was not living up to its union obligations.  However, that job was being done by Liparoto, not F & G, which led to Plaintiffs' claim that the two companies are alter egos.

In terms of the Rite-Aid project specifically, both Liparoto and F & G employees worked on the project.  Liparoto employees prepared the invoices to submit to Liparoto on behalf of F & G. All fringe benefit contribution forms submitted on behalf of F & G for the Rite-Aid project were signed by a Liparoto employee.  The equipment and supplies used for the job were owned by Liparoto, and Phil Liparoto testified that he could not remember if F & G paid for their use.  The record does not show that they did.  Phil Liparoto also testified that he was not sure if Liparoto signed a subcontract for the Rite-Aid job with F & G.  In an answer to a Request for

3

Documents, Defendants stated that there were no contracts or agreements between Liparoto and F & G.

### III. ANALYSIS

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained:

> the plain language of Rule 56 [] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation makes, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4).  Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment."  *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

### B.  LIPAROTO CONSTRUCTION, INC. IS AN ALTER EGO OF F & G POURED WALLS, INC.

The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is "merely a disguised continuance of the old employer."  *See Wilson v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 83 F.3d 747, 759 (6th Cir. 1996); *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990)(quoting *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942)).  Once the alter ego status has been determined, the Collective Bargaining Agreement is read to bind the non-signatory alter ego. *See Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Contracting, LLC*, 581 F.3d 313, 318 (6th Cir. 2009).  The doctrine was meant to "prevent employers from evading obligations" by merely "changing their corporate form."  *N.L.R.B. v. Allcoast Transfer, Inc.*, 952 F.2d 576, 579 (6th Cir. 1986).  The alter ego doctrine is applied in "double-breasted" situations where "two or more coexisting employers perform [] the same work [but] are in fact one business, separated only in form."  *Wilson*, 83 F.3d at 759.

The test for determining whether two companies are alter egos of one another is whether the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision and ownership."  *Nelson Elec. v. N.L.R.B.*, 638 F.2d 965, 968 (6th Cir. 1981).  Whether or not the employer intended to evade union obligations is another relevant factor.  *See Allcoast Transfer*, 780 F.2d at 581.  All relevant factors should be

considered together. *Id.* at 582.

This alter ego doctrine, for example, was applied by the Sixth Circuit in *Allcoast Transfer*, where the Court detected substantially identical management between the suggested alter egos because one man managed all of the companies. The business purpose and operations of the two companies were practically identical because both companies performed the same moving and storage operations. 780 F.2d at 582. The court also found the equipment to be substantially identical because, even though the moving trucks were not used interchangeably, the second company leased the original trucks from the first company. *Id.* Furthermore, the same truck drivers worked for both companies. *Id.* at 583. Balancing these factors led to the conclusion of alter ego status, so the collective bargaining obligations of the signatory company were enforced on the alter ego.

Sixth Circuit cases such as *Trustees of the Resilient Floor Decorators Insurance Fund v. A & M Installations, Inc.*, 965 F.3d 244 (6th Cir. 2005), hold that in order to apply the alter ego doctrine, an "intent to evade" the preexisting contractual obligations through the formation of the second company must be detected. However, in *Trustees of the Detroit Carpenters Fringe Benefit Funds v. Industrial Contracting, LLC*, 581 F.3d 313, 319 (6th Cir. 2009), that decision was clarified, and it was held that an intent to evade is not essential to the imposition of an alter ego status. *See also Allcoast Transfer*, 780 F.2d at 581; *Fullerton Transfer*, 910 F.2d at 337 ("[T]his Circuit has not required ...a showing of employer intent in order to apply the liberalized alter ego standard...[because] intent can too easily be disguised."). Therefore, intent is just one of the relevant factors in determining alter ego status, and "no factor is controlling and all need not be present." *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 587 (6th Cir. 2009).

6

Defendants claim that there was no intent to evade union responsibilities. They rely on the *Resilient Floor Decorators* case. That case, like the instant action, involved a non-union company, Carpet Workroom, and a newly-formed unionized company, A & M Installations. Because Carpet Workroom often bid for the sale of carpet on union projects, it frequently would subcontract its installation work to the unionized A & M. In addition to working on many of the same projects and having many of the same customers, Carpet Workroom and A & M also shared office and warehouse space in the same building. And, because of the physical proximity of the two companies' operations, they also shared office equipment and personnel, as well. 395 F.3d at 246. The court concluded that because there was no factual basis that the union received less than it had bargained for, and there was no intent to evade present, the two companies were not alter egos.

However, this case was distinguished in *Industrial Contracting,* 581 F.3d 313 (6th Cir. 2009). Although the Court agreed with *Resilient Floor Decorators* that the intent to evade is the focus of the alter ego doctrine, it should not be confused with being a prerequisite for finding that there is alter ego status. *Id.* at 319 ("[C]onfusing the *purpose* of the alter ego doctrine with the Sixth Circuit's *test for determining whether it should be applied* apparently led the district court in this case to conclude -- incorrectly -- that evidence of an intent to evade was a prerequisite to the doctrine's imposition."). *Industrial Contracting* held that the *Resilient Floor Decorators* decision is very narrow, and that the finding was based on an "alternative basis: (1) because the non-union carpet sales company had no preexisting labor obligations to evade, (2) because there was no "pervasive intermingling of funds and operations...". *Id.* at 319.

In this case, Liparoto did not have a preexisting labor obligation to evade. The contract

7

was signed with F & G, not Liparoto, nor had Liparoto ever been a unionized company.  That is not in dispute.  However, there is sufficient evidence that there has been substantial intermingling of the funds and operations of the two businesses.  Phil Liparoto is the owner and supervisor of both F & G and Liparoto.  There are no contracts of agreements between the two businesses regarding rent and performing jobs; the bid for the Rite-Aid job was given to Liparoto, and there is no agreement subcontracting it to F & G.  They perform similar work, share equipment, and operate out of the same building.  The two also share administrative staff, a phone number, and a state tax return.  Liparoto employees performed some of the work on the Rite-Aid job.  Based on these facts, it appears that the companies differed in name only.

The Sixth Circuit stated that "when the circumstances so strongly support a finding of alter ego status," an inference that "the employer intended to evade union obligations can be drawn." *Allcoast Transfer*, 780 F.2d at 583.  The fact that no contracts or agreements exist between the business detailing subcontracting, rent, etc., is extremely telling in determining alter ego status, as it appears that Phil Liparoto can simply assign whichever name he wants to the job.  Without any evidence of contracts or agreements between two businesses which purport to have a contractor/subcontractor relationship, there is no real separation or distinction between the two companies.

Overall, the evidence overwhelmingly points to the fact that F & G and Liparoto are alter egos of each other.

C.    **THE INTENT OF THE SIGNATORS IS IRRELEVANT IN THE DETERMINATION OF ALTER EGO STATUS.**

Defendants make much of the fact that, when Santos and Phil Liparoto signed the

Agreement, neither had the intention of binding Liparoto. However, in this Court, collective bargaining agreements are enforced according to their written terms, not intentions.

Section 515 of ERISA, 29 U.S.C. § 1145 states:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Congress enacted this section to permit multiemployer plans to "rely upon the terms of collective bargaining agreements and plans as written...". See *Bakery & Confectionery Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co.*, 133 F.3d 955, 959 (6th Cir. 1998) (internal quotations omitted). Based on this, the intent of Santos to bind Liparoto or not is irrelevent to the determination of alter ego status. Once the alter ego status has been determined, the Collective Bargaining Agreement is read to bind the non-signatory alter ego. *See Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Contracting, LLC,* 581 F.3d 313,318 (6th Cir. 2009). Therefore, because F & G and Liparoto have been determined to be alter egos, the Agreement binds both F & G and Liparoto.

## IV.  CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is DENIED and Plaintiffs' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Defendants shall submit to an audit to determine the fringe benefit contributions owed to Plaintiffs based on the hours worked by their employees.

IT IS FURTHER ORDERED that, should there be an indebtedness, Plaintiffs may file a Motion to Amend the Judgment for an award equal to the amount of indebtedness against the

Defendants, jointly and separately.

Let Judgment be entered accordingly.

s/Gerald E. Rosen  
Chief Judge, United States District Court

Dated: June 27, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther  
Case Manager